Good afternoon, may it please the court Deputy Attorney General Leanne Brewer appearing on behalf of the state defendants Thank you for the opportunity to present oral argument. I would like to reserve five minutes for rebuttal All right, you have a clock there, but I'll also try to help you on that. Thank you After enactment of the Federal Welfare Reform Act the state of Hawaii could have done nothing to replace federal Medicaid Benefits that were taken away from certain aliens including the plaintiff class The district court below found... What do you mean by could have done nothing? The state of Hawaii did not have to enact a separate state funded benefit in order to make up for the Medicaid benefits that were taken away from certain aliens I take it you mean then the state would have maintained the program for citizens, but would have denied benefits to Aliens in the class we're talking about and if so, is that doing nothing and wouldn't that be vulnerable to exactly the same claim We have here. Yes, that's true. You're that by doing nothing. I would mean that the state would not be doing anything other than complying with the Welfare Reform Act, which would have required him the state to terminate benefits of Federally ineligible aliens. Well, it would have exercised its discretion Affirmatively not to give benefits if it went that route Yes And why wouldn't we have exactly the same argument we have here because at that point the state would be Discriminating between citizens and the aliens in this category I'm sorry. I'm not sure I understand your question You you're willing to pay Medicaid for a citizen. You're not willing to pay Medicaid for a non-citizen from the Marshall Islands Why doesn't that present a vulnerability to exactly the same argument we have here and that you're discriminating against these aliens Well, the discrimination if there is any is by the federal government when the what the federal government makes a classification based on alien edge, which it is Definitely empowered to do then that classification would be based Would be subject to only rational basis review and the state's not the federal government That's making the decision not to fund for those people in this the Congress may have have handed the state's a lit firecracker That's going to explode in their faces because the premise of the plaintiff's argument is that Congress doesn't have the power to authorize this kind of discrimination and so it seems to me that that What you you define is if the state did nothing we'd be okay I'm not sure that's true if the state did nothing if the state did not reach into its own pocket and fund the benefits while The same time it was paying benefits. I'll be it with financial assistance from the federal government to citizens Why wouldn't you have exactly the same arguments that we have here today? well, because in that case then the as this court has already determined in Pimentel the classification was made by the federal government and the the individuals who are excluded from the federal program and then would become the Beneficiaries of any voluntary state program that the state might decide to provide would not be similarly situated But but your participation in Medicaid is a voluntary program by the state Nobody the federal government is not compelling you to participate in that program. Yes, that is correct So once you choose to participate in that program, doesn't the Equal Protection Clause force you to fund? Aliens in the same way. No, your honor the the the state the state voluntarily participates in federal Medicaid and must comply with the federal requirements which include Covering only those those individuals that Medicaid says they can cover and also complying with the Federal Welfare Reform Act Which says that they cannot cover certain aliens and they have to cover certain aliens and they may have discretion on some others But when they are complying with the federal requirements, then they're not They're not discriminating against anyone. They are just merely complying with the federal directive Let's take it to what they really did do which was they affirmatively instituted a program that gave COFA and some others less benefits, correct? well initially following the implementation of the Welfare Reform Act What the state of Hawaii did was what state of Washington did with respect to food stamps They provided the equivalent benefits to the COFA residents the plaintiff class So those individuals were actually receiving the same level of benefits as Medicaid We wouldn't be here if you had you meaning the state of Hawaii had stuck with that plan Yes but at some point in time Washington terminated their state funded benefits and Hawaii reduced their state funded benefits by implementing the basic health Hawaii program The The There's similar cases have gone on around the country in Seattle And and I'm talking not now about the food stamps and the program that was in Pimentel and the SNAP program but actual this Powara or however, it's pronounced benefits and there there was some suggestion in the pleadings that given this national health care reform That It may actually give these groups of Aliens benefits and that there's a settlement and a mediation going on in that case Do you have a position as to whether? the new health care law As considered by the Supreme Court would have an effect on benefits here. And then secondly Has this case? Gone to any kind of mediation I'll address the second question first This case has not gone to any sort of mediation with respect to the impact of the Affordable Care Act. My understanding is that many of these aliens would be able to participate in the exchanges to the same extent as other individuals Medicaid is still intact under the Affordable Care Act and Medicaid will still be subject to restrictions as a federal program including the exclusion of Certain aliens from that program the the plaintiff class in this case would not become eligible for Medicaid once the Affordable Affordable Care Act is implemented and I don't believe this it's not affected by any Medicaid expansion that might result from that that act either What about? The Finch case out of Massachusetts, which basically said under the Equal protection clause of the Massachusetts Constitution that it should be Strict scrutiny and it didn't pass strict scrutiny. What's the difference between that case in this case if any? the difference between the Commonwealth care program in Massachusetts and what Hawaii has is that the Commonwealth care program was state program that covered all individuals all residents up to 300 percent that were not eligible for Medicaid so that included citizens as well as aliens there any portion of the Commonwealth program that was No, well It's actually an interesting situation What Massachusetts did is their Commonwealth care program became part of their section 1115 waiver? And the section 1115 waiver is the waiver under which Massachusetts operates its Medicaid program Which is known as MassHealth and the MassHealth portion of it the Medicaid portion of it would be eligible for federal matching funds but for all of the federally ineligible folks whether they were citizens or aliens if they were a citizen over The Medicaid income limits or if they were aliens who were excluded from federal Medicaid They would get benefits through Commonwealth care and the Commonwealth care part of it for any non federally eligible Individuals was funded entirely by the state. So what happened in the Finch case was Massachusetts at some point in time determined that they needed to save money and so they Made a change to Commonwealth care cut out only the aliens from the state funded portion of the program So when they cut out the aliens they left the citizens for instance an over-income citizen in Commonwealth care and that was a discriminate distinction based on alien age made by the state It was not imposed by the federal government and on that basis They found that the state had discriminated and therefore it was subject to strict scrutiny and that was correct. What is that different? I'm sorry. How is that different? The federal government is not saying you cannot provide coverage to the COFA plaintiffs So how is this case different from that the state made a judgment at one point in time to provide coverage and a different point of time not to provide coverage how is this different the difference is is that when the state of Hawaii was providing these state funded benefits for the COFA residents it was not providing a similar benefit for non federally eligible Citizens the only other citizens providing the same Medicare Medicaid benefit to everyone It was being funded in part from Washington, but the benefit and the program was the same wasn't it? I'm sorry that the benefit that was being provided to the Aliens was exact until the point in time when basic health Hawaii was adopted the benefit was provided to aliens was exactly the same benefit that was for being provided to The lawful aliens and the citizens now the lawful aliens and citizens bills were being paid in part by Washington and the COFA category not but the the program was the same the benefits were the same weren't they the benefits were the same but the as I stated the the federal program is Program that excluded the aliens. It's the Congress that looted from funding But this isn't the category of unlawful residents where Congress said you can't give them benefits. We're not fighting about them We're fighting about a category if I understand correctly that Congress said you may or you may not it's up to you state So so I'm not sure how I understand. That's a federal dictate No, they may or may not with respect to state funded benefits with respect to the federal benefit They absolutely couldn't then well the federal government wouldn't fund it But that isn't the same as saying state you can't state can and state did for many years Provide benefits to this category. I see what you're saying You're saying that the state could provide state funded benefits to this alien population And now that they've elected not to provide the same benefits. How is that not discrimination based on alienage? Because there are no similarly situated individuals Are there individuals? that are non-immigrant and Fall into the discretionary category that are not funded under this partial plan In other words, the state is funding Reduced benefits for Kofa and maybe some others, but is there also another group of aliens? That the state chose not to provide discretionary benefits for Under the basic health Hawaii program. Yes the base There may be other aliens, I'm not sure In other words when you look at all that the big statute and it says Yes, you must give it to citizens. Yes, you must give it to qualified aliens. No, you may never give it to Essentially undocumented aliens and then you may give it to all this other list of non-immigrant people who? there's a kind of a Laundry list of people who are non-immigrants and are so my question is is Hawaii Making a distinction in discriminating between Kofa and then other groups of non-immigrants who might be eligible There may be that distinction Basically, yes or no If there are other aliens outside of the category of Kofa residents and the new residents who are not part of this appeal Then yes, those folks would be excluded But nobody that would be this group isn't disadvantaged. There's not a group in that category that receives more benefits. No So what you're not sure of is whether there's might be a group that would have a separate complaint, but receive less benefits. Yes Your honor. I have less than two minutes Thank you, you may reserve that Good afternoon, it pleases the court. I'm Paul Alston representing the Kofa residents in this case Superficially it might appear that we face a rock and a hard place We face the Pimentel decision on one hand and the Soskin decision from the Tenth Circuit on the other But that is not correct In fact, the Pimentel case is strong support for our position in this case And I say that for a number of reasons first in Pimentel this court says That the Welfare Reform Act does not create a uniform federal policy Unlike the SNAP program that was at issue there the Welfare Act does not and this court went on in Pimentel in footnotes 12 and 13 to Distinguish a variety of decisions state decisions including the Finch case from the Massachusetts Supreme Court The early case Aliesa from the New York Court of Appeals All of which determined that the kind of discrimination engaged in by the state of Hawaii was in fact illegal because it was not founded upon any Uniform federal policy and what we face here is a situation where the state has in fact targeted not all aliens, but just Narrowly focused groups of aliens from The Kofa countries. Okay, you you've referred to the fact that we didn't have a uniform We don't have a uniform policy here If that is true, right that is a failing in the Welfare Reform Act, isn't it? That's a failing in Congress's part in terms of what it told the states they could or couldn't do Well, I wouldn't necessarily I wouldn't call it a fail except their invitation, right? I won't call it a failing. I mean it reflects in fact Congress's determination that each state was Able to set its set its course but without but not sanctioning discrimination there's there's nothing in in unlike the snap program where the or The AFDC program where the federal government said you must cover these people here But but you're as I understand your contention, you're not contending that Hawaii has somehow violated the Welfare Reform Act. No There hasn't anything inconsistent with what Congress said Congress gave it some fairly broad fairly broad license and the Hawaii has stepped in and and done it in a particular way that's peculiar to Hawaii because of Hawaii's unusual situation here with respect to the Kofa plaintiffs, right but but when Congress left The state's broad license I submit that to some to some degree as Judge Clifton indicated they handed the state's a lit firecracker because at that point the question becomes Whether the state can discriminate based simply on the existence or the non-existence of a federal subsidy Against certain aliens who the federal government has said they they may cover Well, the question I have is it is kind of how do you draw the bread box because if you say that Congress has made some distinctions between and among aliens and It did that in terms of so that's and those aliens range from undocumented to qualified to a whole other Group, so it's made those distinctions and then it's made a further distinction as to what it wants to fund And it's made a decision that with this let's call them a smaller group Which is your group this smaller group of aliens? that It's not going to require Funding and it's not going to prohibit it But it's made a category that maybe those aliens fall in a different status Why isn't that in effect a uniform federal policy? Which is we our policy is a B and with respect to C We're going to leave this narrow discretion to the states Well two things your honor one is I think as Pimentel says The Welfare Reform Act reflects no pop no uniform policy, but but secondarily Even if the state even if you view that as allowing The state's some discretion the question is has Hawaii Exercised that discretion in a way, which is consistent with with the teachings of Graham versus Richardson Graham teaches that that where There is no uniform policy that well I mean, I'm not sure why You your premise is that it had to get to the rational basis We need to accept your premise that this Categorization with respect to this part of the Welfare Reform Act is not a uniform policy, correct? You need to determine that that's that that would be true But I think but but beyond that I I think that we we are then faced with a situation where Congress in a USC 1622 said that the state could extend benefits to a variety of different groups Including non-immigrants and a laundry list of others the state of Hawaii has chosen and this is reflected in the administrative rules to extend benefits to a wide range of The people on that laundry list it has singled out the Kofa residents people from the disfavored countries for special Unfavorable treatment saying you don't get any benefits as long as you are in in Hawaii no matter whether it's five years ten years or a lifetime and the end that Is not that sort of discrimination is not supported by any sort of congressional policy Disfavored against within the category that Congress told the states you've got discretion The 1628 USC 1622 talks about The state's being able to extend benefits to non-immigrants among others the Kofa residents are a category of non-immigrants But not all non-immigrants. And so what the state has done is singled out them to deny the benefits Or to deny benefits, I'm sorry To deny the full benefits of the Quest programs and if I could digress just for a moment The record reflects that in fact, there was one set of quest programs From which the Kofa residents were all disenrolled They were it wasn't a matter of there being a separate freestanding Policy program for the benefit of the Kofa residents. They were in the quest program They got the quest benefits and they were disenrolled affirmatively disenrolled from that one program Under another statute under a new statute that they created that we that we had attacked We said wait a minute, you know, you have to restore the benefits that were available under quest and Gets the quest benefits that's in this category that Congress says you state you have discretion. It is it is The if you look at the laundry list your honor what you will find is a variety of Qualified aliens and others who Congress says the state may cover The and as Miss Brewer I think acknowledges some of those people in those in that laundry list are in fact still qualified under quest This is in Hawaii revised Hawaii administrative rules 17-17 74 it It lays out Can you could I just ask when you use the word qualified aliens, yes, you're not using the term of art Or are you of qualified aliens that is in the federal statute? I am you must get benefits no, I'm using the quality and the the the the list that Allows them to go beyond and extend to extend state benefits to others Okay, so we're not talking about what is typically known as qualified aliens that automatically Are covered correct? Okay, correct. These are qualified aliens in the sense that they haven't been disqualified, right? They're eligible. They're eligible aliens maybe to distinguish them from the quality That's a more F. So so what I'm saying is that what we have is the state Embarking on its own policy to say to single out the Kofa Residents to say you in particular among all the people we could provide benefits to With with Congress's permission are not going to get help or not going to get the same help as the other people were extending benefits to and The the analog to that is found in the Supreme Court's decision in Nyquist where the state of New York? Decided that it was going to extend educational benefits to only aliens who were Either he would either apply to become citizens or expressed an intention to become citizens and the Supreme Court said no you Know New York you don't get to draw these distinctions and and what I submit Hawaii has done is drawn an irrational distinction because alone among this group of Aliens for whom there is no federal Medicaid support There is in fact as the record reflects money paid by the federal government to Hawaii to provide social Services to this group, so it's sort of a you're in for a dime. You're in for a dollar Proposition because what you're saying is there's this discretionary Category and leaving aside the question we asked The council for the state about what happens if they did nothing, but once they decide to go that route with the laundry list Then You're saying they can't go kind of Half-hog they gotta go whole hog if you're gonna give some to these guys you got to give it to the rest of the people That's right because you can't because what I suggest that the state cannot single out particular groups of Aliens who the federal government has said they may provide benefits to on the basis that they don't like Serving they're giving full benefits to that particular category But either this undoes Congress's scheme or it's sort of a cruel joke on the states because Hawaii says okay, we'll participate in Medicaid because we think this is advantageous for Hawaiians and The federal government says yes, and the Medicaid is going to include these These immigrants these aliens it's going to exclude these aliens and then there's a third category where we give you the option to do whatever you want and Your argument is by virtue of the Equal Protection Clause Hawaii must fund them to the same extent as as the as the federal Medicaid Program, I don't I don't believe you need to go as far as your initial questions to miss brewer would imply that is you must Provide benefits to everyone. Oh Because the question here is where the state has chosen to provide Discretionary benefits to some aliens, okay And then single out the Kofa residents and say not not you Let's go back goes back to miss Brewer's opening statement, which judge which judge McEwen jumped on very quickly Which was could Hawaii have decided not to have funded Kofa folks at all? I assume that your answer is no that would not be acceptable I would say no, but I said but you do not need to reach that question in this case Oh, I it seems to me that it's front and center on well but not necessarily your honor because because the question isn't whether Congress whether the state must fund every Every eligible alien, but whether having chosen to provide Benefits to some eligible agents some discretionary benefits to some eligible aliens Is it been in a position where it can say we don't particularly like this group of eligible aliens? We hope it like the people from this country Because if that's true counsel, then you do buy the state's argument that had they decided not to fund anybody in the discretionary category I don't buy that argument. But I've said what I'm saying is that that is a harder I recognize that is a harder argument. And what I'm saying is you don't need to reach it Okay, let me ask and I can't I can't lose because the answer to that may turn out to be when I don't like I Was looking at this case that the Ninth Circuit had back in 85 pseudomere. Yes, which is cited And there's some language in there that made me sit up and so I appreciate your comments on this As you remember it's talking about a FTC Benefits and it says under the federal law. Nothing prevents a state from adopting more liberal eligibility benefits So it then goes on to say In effect the plaintiffs argue that because the state refused to adopt these more liberal eligibility it's really a matter of state not federal policy and Amount to compelling the states to adopt each and every more generous classification, which on its face is not irrational It seemed to me almost By fortuity the court was almost foreshadowing the exact Situation we have here, which is You don't have to provide benefits perhaps But if you do then you've got to be the same liberal with everybody and they're saying well We disagree because then it basically it would compel the states to do this. So why isn't that language in pseudomere? Applicable to your case two reasons. You are first the the broad language that you cited is Undercut and narrowed by the language which appears at head note 10 Where it describes the fact that the federal policy in that case Requires the participating Is it in the middle of the paragraph that begins in the instant case It says thus the statute apparently requires the state not only to grant benefits to eligible aliens But also to deny benefits to aliens who do not satisfy the test And so and so what you had in pseudomere was the same kind of program you had in Pimattel The federal government said you must do this you must cover these people you cannot cover these people Well, didn't that isn't that what happens here is they said you must cover qualified aliens You may not go for the undocumented and then they added a third one third And and that's that third category that doesn't exist in pseudomere Which is the ones with a state where the federal government has said you may You may cover them the second reason once once they decide To Exercise their discretion to cover is it correct that your position would be they got to cover everybody In that I Don't say cats and dogs, but in that laundry list category. They have to cover everybody and The benefits have to be equal To the benefits they gave to the citizens and the other aliens Once they choose to to provide benefits to some on that laundry list Then they have to go all the way to to provide benefits to all on that laundry list So so it's really almost if I read that it's almost like In some maybe judge by be sort of suggested perverse ways like Congress literally mandated Through discretion they mandated that they have to know not necessarily I mean what what Congress well all Congress said is you may cover them right, but Break up that group into smaller subparts and decide which ones you're going to cover in which parts you aren't especially where you're deciding based on alien international origin because that They may within that It may be in another case that if they've decided based on some Criterion that is not subject to strict scrutiny if they've decided that they're going that That that's acceptable But but where you they've gone down the road of saying we're going to provide benefits to some eligible aliens Then the state can't say there's some eligible in the sense that Congress's given discretion then I submit the state can't say you can't pick and choose among the countries that it's a let's say They don't pick let's say that there are ruling was you know what? You can't pick and choose among all these people because that is a pure alien age category, but As to how much you might give these? individuals That's something that Is part of this uniform policy where you're not mandated to give them and so you can decide how much With what would be wrong with that? Well that that leads you right back into Graham your honor because in Graham you'll remember that the state of Arizona said to aliens If you're here for 15 years We'll give you benefits that that I submit is the same thing if you're here. We'll give you a dollar Versus versus $5 the other part of it is here. We have a situation where this is a lifetime ban for the COPA residents a lifetime ban on equal benefits The the the others but that there you had the state well conflicted with federal law I mean you Graham seems different the principle seems to be appropriate But it really seems that the structure is different in Graham Because state law actually conflicted with overriding federal immigration policy there I thought right so I can't quite Maybe you can help me, but I it's like Graham doesn't quite get you there and Judge Seabright said the same thing I mean Graham doesn't doesn't quite take us all the way there and I acknowledge that it probably doesn't but Graham does get us to a place where at the at the threshold Every discrimination against aliens by by states Is subject to strict strict scrutiny unless there is some uniform federal policy that's being implemented and where the state is Acting in an area unbounded by any federal policy that says you know you can't or you must What's that? Why does a federal policy have to be? It's So Explicit why isn't it a federal policy that there's some discretion? We've we've looked we meaning the federal government. We've looked at all these aliens possibilities, and we've now that we in the exercise of our Federal Authority divided them up into different categories, so we have exercised a policy and the policy Isn't a mandatory one with respect to this group, and so what we've made that, but it is a uniform policy It just gives you discretion Why couldn't why isn't that part of an overriding policy because? Congress did slice and dice the category well But but the question then becomes did Congress in granting discretion to the states authorized the states themselves to make Their own judgments based on alien Right so that would that would answer let's say they didn't because but they didn't distinguish between All the ABCD's under that so that would answer part one right, but then that wouldn't answer part two Which is the level of benefits well? I said that that it it does answer the level of benefits because you then end up with if under Hawaii's scheme as it stands now you have some people who under the medic under the Welfare Reform Act the state has the discretion to extend benefits to who get the quest benefits Right, but what if you'd say well, you know you've got to then go everybody gets quest or everybody gets the COFA I mean, but it has to be the same because you can't along judge Clifton's lines You can't distinguish between a and C and D and E Right because then then what in effect what you're allowing the state to do is implement its own view of immigration policy You're allowing the state to say gee you know these these people were going to give the quest benefits to because we don't have any hard feelings toward Those countries but the COFA countries we don't particularly like because they're they're putting a burden on us So we're going to give them lesser benefits in hopes of I suppose and discouraging them From coming to Hawaii and we're going to do that Not because we don't get any support from the federal government But we don't get enough support from the federal government because the the people who are getting the quest benefits were funding a hundred percent with state money the people who are in the in the discretionary class the others the the COFA people they're going to get lesser benefits notwithstanding the fact that federal policy is reflected in the The federal government is giving Hawaii money to provide benefits, but it's not enough money And so we're gonna you know we're gonna. We're gonna drive their benefits down basically using them in a game of chicken with the federal government a State constitutional claim here, and you ask for a declaratory judgment under the Hawaii Constitution, and I don't know if there are provisions of the Hawaii Constitution or Interpretations for example within equal protection that might be different so one question is Should we send this the way Supreme Court and let them take the first crack under the way Constitution perhaps? You know the Hawaii Supreme Court has as Judge Clifton knows knows best on very on many occasions Staked out a separate course for the whole for the Hawaii courts Constitutional protections, I don't know of anything particular in in the Hawaii case law that would say in this instance There would be Better protection, but but the point you raise is an important one for another reason as well And that is you know we are here on a preliminary injunction motion appeal and The facts haven't been fully developed and the facts will help I submit inform the law Ultimately if this case were to go to trial and I I believe that that if you find that we haven't shown enough Within any factual respect then the appropriate course would be to remand back to the district court And and or refer to the case to the Hawaii Supreme Court because upon upon further factual development I think what we would we would be able to show for example is that is that Hawaii has has done what I've suggested and that is Isolated a particular group a particular subgroup of the people it has the discretion to serve That's that's something I want to focus on because I had trouble identifying From the record we have now right who it is we're talking about that's been favored Okay, so is there anything in the record that we have now that that would better identify? What that category is yeah? Yes, sir. Yes, sir, and I think a couple of things um We know that that under the rules for the better better health Hawaii the people served by that program are the Kofa residents and The new the so-called new residents people who have been in the in the country for five years less than five years So once they get to be five then they go over to the other category right they get the better benefits So you have those guys would you call the low-end been recipients? I'm sorry low-end money-wise yes Yeah, and so you have in in the in the inferior program You have the the Kofa residents and for a period of time the new residents Only the Kofa residents stay there stay in the low, so one category is the post five-year Residency category right there's still in the category defined by Congress is up to the state's discretion But they are under the quest program not better health Hawaii They shift to the to the other program after five years, but there are others in in the administrative rules governing the the quest program There are in two sections laundry lists of people who are entitled to participate in quest They include people who who are in the discretionary category under 8 USC 1622 Could you say who I could I say who your honor? I don't mean their names. I mean their category You know off the top of my head Afterwards the clerk has you know piece of paper, and you can add that or you could just send us a letter Just so we understand that we're dealing with the right categories. Yes, there are 13 or 14 different categories your honor So I would have to go okay. That's fine So why don't you do that after argument you can send us a letter to tell us if you would call those people in the high-end category of the discretionary Recipients yes All right, thank you We've made you work a little extra so It's been a little more extra time and so the I'm going to give this state Four minutes for rebuttal total so that you'll have some additional time. Thank you your honor I just wanted to address some of the things that counsel mentioned The first is a question came up about the Hawaii constitutional claim and my understanding is that the Claim under the Hawaii Constitution was withdrawn, so I don't know that that is actually still on the table Withdrawn or not part of the basis for the preliminary injunction. I believe it was withdrawn from the the lawsuit With respect to these this laundry list of other aliens that may would you confirm that with us? after Arguments send us a notice to where we would find that in the record just so we know the answer to that question All right, thank you Saved her some work. Thank you and then counsel spoke about a laundry list of optional Aliens that were are included in quest and and I can also take a look at the same issue and Confirm for the court whether that is the case my understanding potential group identify Which are the new residents after they're new I mean after five years Are they new residents after five years aren't optional at that point? They are no longer excluded by the Welfare Reform Act from Medicaid So they move That's not discrimination within this middle category. They fall under the part that Congress says must be treated like citizens. Yes But with respect to any of these other Aliens my understanding is that there are other any aliens and there are some there are certain categories of aliens that the Welfare Reform Act says that the state must cover even in the sections where they say say for instance qualified aliens may Are not eligible for federal public benefits except and then they list, you know, and usually those are refugees asylees veterans We're not talking about those. We're talking about I think people who are qualified as or classified as non-immigrants so the question is Are there In aliens who fall in this non-immigrant category other than the COFA people and the less than five-year people To whom the state of Hawaii is giving discretionary benefits, but at a higher level than the COFA group Okay that I would have to check my understanding from counsel's Statements was that these were Aliens who would otherwise be federally ineligible and so I'm not exactly sure which categories he's referring to because if they are not federally eligible They're not going to get into quest Well, you're actually prohibited. Yes We're talking about Medicaid eligibility and the only What the state did was they did include or use their existing Medicaid structure as I mentioned in the briefs Just as Washington did with their federal food stamp structure Is that even though there was a separate state funded benefit provided for these federally ineligible aliens They delivered it through their existing Federal program infrastructure and that's a more matter of efficiency than anything else We have people that are congressionally mandated to be covered by Medicaid We have people that aliens that Congress has forbidden to be covered by by any state program or by Medicaid And we have this third group and the COFA folks fall in there who else is in that group besides Well, the COFA folks are not actually in the optional coverage for Medicaid what right? There's a third category in which that are that are not eligible for Medicaid and they're not disqualified from from from Participating in any state program because we do have a group of aliens that the state may not fund even if they wish to yes Okay, we have this third group that Congress is giving you the option Yes, Hawaii's and the COFA folks fall in that group and Hawaii has chosen to fund them Yes, who else who else might Hawaii have included in that group aside from the COFA? Well, they have included the Qualified aliens under five years. Okay. Is there anybody else or does that exhaust the set? That I'm not sure and the second part of that and I guess we're asking both sides to shed some light afterwards I'm particularly concerned of whether there's anybody in that group that is Advantaged as compared to these plaintiffs that is is there anybody in this middle group third group? Whatever we're calling it where Congress has told the states you have discretion that our government's not paying But you state you can you can pony up the money yourself and pay them. Is there anybody in that group? That's doing better than the COFA plaintiffs Allowed to be part of quest or in some other fashion, right my understanding. No Why don't we do this? Your time has expired, but so everybody's operating off. The same page is and it may take a Advise as to Which groups are covered by this third optional category which ones Hawaii has chosen to cover and under what program and Whether there's any differential in the benefits between and among this third category of aliens And Presumably you can do that in a by letter No more than five to seven pages. We don't want another brief and we don't want to show argument. We're really looking to answer these specific questions Perfect thank you very much appreciate the collegiality The case just argued is submitted and we thank both counsel for both your briefing and your argument It's an interesting case. It's a complicated case Thank you for coming today
judges: McKeown, Clifton, Bybee